633 A.2d 425

**Randy S. KOVACS**

v.

**Malcolm L. KOVACS.**

**No. 60, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 1, 1993.

Raymond Daniel Burke (Paul Mark Sandler, Freishtat & Sandler and Natalie H. Rees, on the brief) Baltimore, for appellant.

Kevin B. Kamenetz, Towson, for appellee.

Argued before BLOOM, CATHELL and HARRELL, JJ.

BLOOM, Judge.

Randy S. Kovacs appeals from a judgment of the Circuit Court for Baltimore City granting an absolute divorce to appellee, Malcolm L. Kovacs, and from post judgment orders of the court relating to custody of and support for the parties' minor children. She presents six questions, the first four of which raise issues that have not heretofore been addressed

either by the Court of Appeals or this Court. We restate the issues as follows:

1. Whether the chancellor erred in adopting the ruling of the Beth Din concerning the beneficial interests of the children without first exercising independent judgment before issuing the Judgment for Absolute Divorce.

2. Whether the chancellor erred in refusing to modify or vacate the ruling of the Beth Din.

3. Whether the chancellor abused his discretion in refusing to appoint independent counsel for the children.

4. Whether the chancellor improperly delegated his judicial authority by appointing a social worker to conduct fact finding on behalf of the court.

5. Whether the chancellor abused his discretion by modifying a *pendente lite* custody order without a showing of a change of circumstances.

6. Whether the chancellor abused his discretion in denying Mrs. Kovacs's Motion to Modify Child Support.

We shall affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

The parties are Orthodox Jews, married on 17 February 1975. Six children, four boys and two girls, were born of their marriage. At the time of the lower court proceedings, the children were minors, ranging in age from six to seventeen.

When the couple's marital discord came to a head, they turned to their rabbis, who urged them to resolve their differences in a Beth Din [1] (a Jewish court proceeding before a panel of three rabbinic judges). On 30 April 1991, the parties executed an agreement entitled "Shtar Berrurin and Submission Agreement," which is captioned "In the Matter of the Arbitration Between" Malcolm and Randy Kovacs. The docu-

---

1. Variously transliterated from the Hebrew as Bais Din, Bet Din, or Beth Din (House of Judgment).

ment makes several references to arbitration and states that the parties agree to submit their controversy "to arbitration by the Bais Din in accordance with Jewish law as set forth in the Shulchan Oruch (Code of Jewish Law) as interpreted by the Bais Din." Under this agreement, the parties petitioned the Beth Din to dissolve their marriage and issue a ruling concerning a "separation agreement, child support, custody, visitation rights, division of joint property etc."

The Beth Din issued two interim rulings, in April and June, 1991, directing the parties to rotate possession of the family home every two weeks. The party having possession of the home was responsible for the care of the children. This procedure continued from June 1991 until September 1991, when the mother refused to comply further with the arrangement. On 11 February 1992, she filed a complaint for limited divorce in the circuit court. On 23 March 1992, Judge Edward J. Angeletti issued a *pendente lite* order terminating the rotation system, granting the parties joint legal custody with primary physical custody to Mrs. Kovacs, barring Mr. Kovacs from the family home, granting Mrs. Kovacs use and possession of the family home, and directing Mr. Kovacs to pay all major monthly bills plus $200.00 per month in child support as ordered by the Beth Din. Judge Angeletti offered the parties the opportunity to withdraw from the jurisdiction of the Beth Din, but neither party elected to do so. He thereupon ordered the parties to continue proceedings before the Beth Din.

The Beth Din held three hearings, on 5, 12, and 19 May 1992, with counsel present. The Beth Din asked Dr. Edwin Susskind, a psychologist, to meet with the Kovacs family for a sufficient period of time to enable him to make recommendations concerning the divorce.

On 3 August 1992, the Beth Din issued its ruling, which was forwarded to Judge Angeletti along with Dr. Susskind's report. The Beth Din ruled: (1) the father would have custody of the four youngest children and the mother would have custody of the two oldest children; (2) the father would pay the mother $250.00 per month per child for child support for a

total of $500.00; (3) each party would have visitation with all six children one weekend per month, with the parties to exchange the children of whom each had custody one weekend per month; (4) the father would have possession of the family home with the mother to receive $20,000.00 for her interest in that property; (5) the mother would not receive any rehabilitative alimony; (6) Mr. Kovacs would grant a "Get" (Jewish divorce) to Mrs. Kovacs; and (7) the ruling would become effective 30 August 1992.

On 6 August 1992, Mr. Kovacs filed with the circuit court a petition to confirm the arbitration award of the Beth Din, a Counterclaim for Absolute Divorce, and a motion to shorten the time requirements for Mrs. Kovacs's reply in light of the 30 August 1992 effective date established by the Beth Din. His complaint was scheduled to be heard on 14 August 1992. At that hearing, Mrs. Kovacs submitted a petition to vacate the arbitration award or, in the alternative, to modify or correct the arbitration award. Mrs. Kovacs also moved to have the chancellor appoint independent counsel for the children, and requested "a full evidentiary hearing."

At the August 14th hearing, Judge Angeletti found that the Beth Din proceeding was in accordance with the Maryland Uniform Arbitration Act and that Mrs. Kovacs had voluntarily entered into the arbitration process. He denied Mrs. Kovacs's request for an evidentiary hearing and took testimony to establish the grounds for an absolute divorce.

Mr. Kovacs's Counter–Complaint for Absolute Divorce, alleging a one-year voluntary separation, was answered and admitted by Mrs. Kovacs and corroborated by testimony. The court granted Mr. Kovacs a Judgment for Absolute Divorce dated 18 August 1992, in which the ruling and awards of the Beth Din were adopted and set out almost verbatim. Mrs. Kovacs's complaint for a limited divorce was dismissed by the court as moot. Mrs. Kovacs promptly appealed.

On 28 August 1992, a panel of this Court granted, in part, Mrs. Kovacs's Emergency Motion for Stay Pending Appeal, staying those portions of the Judgment for Absolute Divorce

concerning custody of the children and use and possession of the family home. Judge Angeletti's *pendente lite* order of 23 March 1992, therefore, remained in effect with respect to custody and possession of the family home.

On 19 September 1992, one of the parties' daughters revealed that she was sexually abused by one of her brothers while left unsupervised in the care of Mrs. Kovacs on 17 September. The next day Mr. Kovacs took the children to a psychologist, Dr. Barbara Gaver. After speaking with the girls, Dr. Gaver notified the Department of Social Services ("DSS"), Child Protective Services Division, which promptly acted to remove the four younger children from the care of Mrs. Kovacs. On the same day, Mr. Kovacs filed a Petition for Modification of Custody. Judge Marvin B. Steinberg conducted evidentiary hearings on that petition on seventeen days over the period from 24 September 1992 through 24 February 1993. On 24 September 1992, Judge Steinberg issued an initial temporary order granting Mr. Kovacs custody of the four younger children, thereby superseding Judge Angeletti's *pendente lite* order, which had placed all six children in the care of Mrs. Kovacs.

On 20 and 25 November 1992, Judge Steinberg issued orders temporarily continuing the existing division of custody, pending the appointment of someone to do an evaluation of the family. He appointed Dan Meranski, a social worker associated with the Jewish Family Services Agency, to conduct an investigation and prepare a custody report for the court. On 16 February 1993, Mr. Meranski delivered his written report to Judge Steinberg. Mr. Meranski recommended that no change of custody should be made and that the division of custody pursuant to Judge Steinberg's earlier temporary custody orders should continue.

On 24 February 1993, Judge Steinberg delivered from the bench an oral summary of his findings. He stated specifically that his order as to custody and visitation was based on Mr. Meranski's recommendations and was temporary until the

Court of Special Appeals heard the case and could issue its decision. Judge Steinberg stated:

> The custody that I am giving is temporary. Visitation I'm giving is temporary. The court is very impressed by Mr. Moransky's [sic] recommendation ... and the Court has concluded that at least for the time being, that might be only for a day or two, I have no idea, this court is going to keep the status quo of these children exactly the way it is, the four younger ones with the father, two older ones with the mother.

With respect to child support, Judge Steinberg ruled that he did not find changed circumstances to justify modifying the support that had been ordered by Judge Angeletti, who had adopted the figure set by the Beth Din. On 3 March 1993, Judge Steinberg issued these rulings in his last order.

### *Exercise of Independent Judgment by Chancellor*

■ Mrs. Kovacs argues that, because Judge Angeletti failed to exercise independent judgment before adopting the ruling of the Beth Din as the basis for the award of custody in the Judgment for Absolute Divorce, this Court must vacate at least that portion of the judgment. We agree.

The record supports the conclusion that Judge Angeletti adopted the ruling of the Beth Din concerning custody, visitation, child support, alimony, and possession of the family home as the basis for the Judgment for Absolute Divorce without exercising his own independent judgment as to matters decided by the Beth Din. In his Memorandum Opinion, Judge Angeletti stated that, as a matter of law, once a trial court recognizes a voluntary arbitration agreement and compels the parties to participate in the arbitration, "the hearing Judge's role ceases." Acknowledging "[t]he skilled judgment brought by the arbitrators to this case," he incorporated into the divorce decree the decisions of the Beth Din.

■ Md.Code (1984, 1991, 1993 Supp.), § 8–103(a) of the Family Law Article (hereinafter "F.L.") provides:

The court may modify any provision of a deed, *agreement,* or settlement with respect to the care, custody, education, or support of any minor child of the spouses, if the modification would be in the best interests of the child. (Emphasis added).

The word "may" in this statute grants the chancellor discretion to modify an agreement before the court regarding the care, custody, education, or support of a minor child. In order to exercise this discretion, the chancellor must first assess the impact of the agreement on the child and determine if the agreement is in his or her best interest. Consequently, when there is a challenge to such an agreement, the chancellor cannot refuse to consider its effect on the child.

An agreement to arbitrate issues that concern the best interests of children, such as custody and support, is equivalent to an agreement on those matters. If parents cannot bind the court by an agreement affecting the interests of their children, they cannot bind the court by agreeing to let someone else, an arbitrator, make such a decision for them. Or, as stated in *Agur v. Agur,* 32 A.D.2d 16, 298 N.Y.S.2d 772, 777 (1969), *appeal dismissed,* 27 N.Y.2d 643, 313 N.Y.S.2d 866, 261 N.E.2d 903, *appeal dismissed,* 32 N.Y.2d 703, 343 N.Y.S.2d 607, 296 N.E.2d 458 (1973), "An agreement to arbitrate custody is not distinguishable from an agreement to give custody." *Cf., Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91 (1983) ("Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. Arbitration is a matter of contract which the parties should be allowed to conduct in accordance with their agreement").

The agreement to arbitrate executed by Mr. and Mrs. Kovacs and the result of that agreement, the ruling of the Beth Din, are subject to F.L. § 8–103(a). Consequently, when Mrs. Kovacs challenged that arbitration award, the chancellor was required to determine whether the decision of the Beth Din was in the best interests of the children. He erred in assuming that his role as chancellor ceased as soon as the

arbitration award was made and in failing to make independent findings regarding the decision of the Beth Din.

 The failure of a chancellor to exercise independent judgment with respect to matters concerning the best interests of children constitutes a neglect of the duty of *parens patriae* entrusted to the circuit court. As the representative of the State, the chancellor's responsibility to ensure the best interests of the children supersedes that of the parents. *Dietrich v. Anderson*, 185 Md. 103, 116, 118, 43 A.2d 186 (1945) (parental rights are subordinate to those of the sovereign state and a court of chancery stands as a guardian of all children to protect and advance their welfare); *Wentzel v. Montgomery General Hospital, Inc.*, 293 Md. 685, 702, 447 A.2d 1244 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 790, 74 L.Ed.2d 995 (1983) (*parens patriae* power of equity courts is plenary to afford minors whatever relief may be necessary to protect their best interests).

The Court of Appeals emphasized the obligation of the chancellor to exercise independent judgment with respect to custody of children in *Domingues v. Johnson*, 323 Md. 486, 490–91, 593 A.2d 1133 (1991), in which the Court held that a chancellor cannot accept the recommendations of a master without first exercising his independent judgment concerning the proper conclusion to be reached based upon the facts found by the master. As Judge McAuliffe stated:

> The chancellor must carefully consider the mother's allegations that certain findings of fact are clearly erroneous, and decide each such question. The chancellor should, in an oral or written opinion, state how he resolved those challenges. Having determined which facts are properly before him, and utilizing accepted principles of law, the chancellor must then exercise independent judgment to determine the proper result.

323 Md. at 496, 593 A.2d 1133.

 By analogy, we hold that a chancellor cannot adopt an arbitration award that concerns the beneficial interests of children without first exercising independent judgment to

determine whether the best interests of the children are met by that award. *See Lieberman v. Lieberman,* 149 Misc.2d 983, 566 N.Y.S.2d 490, 495 (1991) (arbitrators, such as a Beth Din, have the authority to decide matters of custody, visitation, and economics so long as the results do not adversely affect the child).

Although the issues concerning the custodial arrangements for the Kovacs children should not have been adopted by the chancellor without exercising his own independent judgment as to the best interests of the children, the award made by the Beth Din with regard to alimony and property issues, if otherwise valid, was appropriate to be adopted without further consideration. Except as to matters affecting the best interests of children, a valid settlement agreement may be made part of a judgment for divorce without the chancellor having to make independent findings, provided the agreement is not facially unjust or inequitable. *Jackson v. Jackson,* 14 Md.App. 263, 269, 286 A.2d 778 (1972). While, for reasons we shall now explain, we uphold the Judgment for Absolute Divorce with regard to alimony and property issues, we vacate those portions of the Judgment of Absolute Divorce that concern custody of and visitation with the parties' children.

### Validity of Arbitration

Mrs. Kovacs argues that Judge Angeletti should have vacated the entire award of the Beth Din because its proceedings were not in accordance with the Maryland Uniform Arbitration Act (the "Act"), Md.Code (1989, 1993 Supp.) § 3–201 *et seq.* of the Courts & Judicial Proceedings Article (C.J.). Specifically, Mrs. Kovacs alleges that her counsel was not permitted to make an opening or closing statement or cross-examine witnesses called to testify, and that the Beth Din relied on evidence not introduced during the proceedings. She also contends that the arbitration could not confer jurisdiction on the circuit court to enter judgment on the award of the Beth Din because the arbitration agreement did not state

it was "under the law of the State" as required by C.J. § 3–202 of the Act.

To support these allegations, Mrs. Kovacs proffers the affidavit of her attorney; she does not, however, provide a transcript or record of what transpired at the proceedings of the Beth Din. Mr. Kovacs disputes her account of the proceedings and in opposition thereto presents the affidavit of his counsel, which states that at the three hearings of the Beth Din "[b]oth parties exercised their right to present evidence material to the controversy ..., to cross examine witnesses who appeared at the hearing ..., [and b]oth parties were represented by attorneys...." There is no record to support Mrs. Kovacs's allegations concerning deficiencies in the Beth Din's proceedings. Nor is there any explanation for the absence of a record. Presumably, the proceedings before the Beth Din were not recorded; perhaps it is not customary to record them, either stenographically or electronically, but there is no assertion that the Beth Din forbade the parties to record its proceedings. In the absence of a record, Mrs. Kovacs has simply failed to support her allegations that her counsel was not allowed to cross-examine witnesses or otherwise represent her effectively.

 A party asserting that error was committed by an arbitration panel bears the burden of showing, by the record, that the error occurred. Mere allegations and arguments contesting the validity of an award, unsubstantiated by the record, are insufficient to meet that burden. The failure to provide the court with a transcript warrants summary rejection of the claim of error. *Azcon Construction Co., Inc. v. Golden Hills Resort, Inc.*, 498 N.W.2d 630, 635–36 (S.D.1993) (owner failed to establish that arbitration panel exceeded its jurisdiction in construction dispute where record contained no transcript of arbitration proceedings); *Marra Constructors, Inc. v. Cleveland Metroparks System*, 82 Ohio App.3d 557, 612 N.E.2d 806, 810 (1993) (appellate court presumed regularity of arbitration proceeding where city park district failed to provide verbatim transcript or other complete record of evidence

when challenging arbitration award to contractor); *Tayco Constr. Co., Inc. v. La Cuisine Restaurant, Inc.,* 593 So.2d 954, 955–56 (La.App. 4 Cir.1992) (claim that party was denied due process during arbitration proceeding was dismissed on appeal when that party failed to provide either the trial court or the appellate court with a transcript of the proceedings); *Lorenzini v. Group Health Plan, Inc.,* 753 S.W.2d 106, 109 (Mo.App.1988) (an incomplete record, such as the lack of a transcript of the proceeding, precludes appellate review of whether the evidence presented was sufficient to support the arbitrator's award). *Cf. Newell v. Richards,* 83 Md.App. 371, 385, 574 A.2d 370 (1990), *rev'd on other grounds,* 323 Md. 717, 594 A.2d 1152 (1991), in which this Court presumed that evidence before the chairman of a medical malpractice arbitration panel was uncontroverted where the patient did not provide the Court with the record upon which the chairman based his decision.

Even if Mrs. Kovacs could have substantiated her allegation that the Beth Din did not conduct its proceedings within the procedural requirements of the Act, such violation would not invalidate the award. Based on our reading of the Maryland Rules, we conclude that the Court of Appeals has recognized the validity of an arbitration proceeding that does not comply with the Act, so long as the litigants voluntarily and knowingly agree to the arbitration procedures. Md. Rule E2 provides:

> After a final award has been made in writing in an arbitration to which the Maryland Uniform Arbitration Act is inapplicable, court proceedings may be had to confirm, vacate, modify, correct, or enter judgment on the award.

This rule explicitly refers to an arbitration not sanctioned by the Act, which we take to mean an award made under the laws of another state or, as in this case, an in-state award made under laws other than the laws of Maryland or under procedures not in accordance with the Act. Of course, if arbitration proceedings do not conform to notions of basic fairness or due

process, the court would be justified in refusing to confirm an award.

 Furthermore, Md. Rule E3 provides:

If all parties to any pending action other than an appeal from an administrative body, file a written request prior to trial that such action or any issue thereof be referred to arbitration for decision, the court shall order such action or issue referred to arbitration. *Except in such specific respects as are ordered by the court,* the provisions of the Maryland Uniform Arbitration Act shall be applicable to any such arbitration. (Emphasis added.)

This rule gives the trial court authority to order the litigants to submit to an arbitration that does not conform to the requirements of the Act. Again, the court would undoubtedly not require parties to submit to arbitration under procedures that would not meet the standards of basic fairness. Accordingly, we hold that litigants may waive their rights under the Act and submit to arbitration proceedings that do not meet all of the requirements of the Act. Those requirements are not numerous: § 3–214 provides that at an arbitration hearing the parties have the right to be heard, to present evidence material to the controversy, and to cross-examine witnesses, but the arbitrators are not bound by technical rules of evidence; § 3–216 provides that a party has a right to be represented by counsel at any arbitration proceeding or hearing, and that this right cannot be waived prior to the proceeding or hearing. In this case, the parties voluntarily and knowingly executed an arbitration agreement that expressly provided that the proceedings would be conducted according to Jewish law. They agreed to the procedure as provided for by the "Shulchan Oruch (Code of Jewish Law) as interpreted by the Bais Din," even though the procedural requirements of the Shulchan Oruch may differ from those contemplated by the Act. The parties expressly waived application of Maryland law and the procedural aspects of the Act when they agreed to arbitration under Jewish substantive and procedural law. Even if Mrs. Kovacs's allegations of procedural defects were to be accepted, her complaints do not mount up to a denial of basic fairness

that would mandate refusal of the court to confirm the award. It is particularly significant that Judge Angeletti did not compel the parties to arbitrate under the agreement; they knowingly chose to do so.

## Appointment of Independent Counsel

Mrs. Kovacs argues that both Judge Angeletti and Judge Steinberg committed reversible error by denying her request to appoint independent counsel for the children.

She contends that none of the children consented to have their rights determined by the Beth Din, or were even present to participate in the proceedings. We reject this contention, because, as stated above, the Beth Din was not the final arbiter to decide the fate of the children. The final determination of what was in the best interests of the children had to be made by the circuit court, which has jurisdiction over the beneficial interests of the children, with or without their consent. *See* Md.Code (1991, Supp.1993), F.L. § 1–201.

Mrs. Kovacs also contests the Beth Din's reliance on the findings of Dr. Susskind and the acceptance by Judge Steinberg of testimony from Mr. Meranski and Dr. Gaver. She contends that the information introduced by those individuals was protected under the patient-psychologist privilege, Md. Code (1989, Supp.1993) § 9–109 of the Cts. & Jud.Proc. Code Article (hereinafter "C.J."). She argues that because the information was relied upon and revealed without the consent of a guardian appointed on behalf of the children, as required by *Nagle v. Hooks,* 296 Md. 123, 460 A.2d 49 (1983), that evidence was tainted. Therefore, Mrs. Kovacs asserts, the chancellor should have appointed independent counsel for the privileged information and his failure to do so constitutes reversible error.

Md.Rule 2–517 requires an objection to the admission of evidence to be made "at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent." With regard to the testimony of Mr. Meranski, Mrs. Kovacs failed to object at trial. Her failure to do so is

regarded as a waiver estopping her from obtaining review of that point on appeal. *Phil J. Corp. v. Markle,* 249 Md. 718, 725, 241 A.2d 718 (1968); *Fireman's Fund Ins. Co. v. Bragg,* 76 Md.App. 709, 719, 548 A.2d 151 (1988).

■■■ With regard to the report of Dr. Susskind, however, Mrs. Kovacs did raise the issue of the children's patient-psychologist privilege under C.J. § 9–109 in her motion to appoint independent counsel for the children. During the hearing on that motion and the seven other motions Mrs. Kovacs filed, Judge Angeletti restricted her argument to thirty minutes and stated:

> Let me just mention one thing. I have copies of all these [motions] and I have read everything in them. And if you are going to repeat everything that you have already pleaded, we are not going to get out of here today. And it is irrelevant to do that. Please. I have read every word that has been submitted.

Md. Rule 2–517(c) provides:

> For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court.

By making known to Judge Angeletti her objection to Dr. Susskind's testimony on grounds of privileged communications, Mrs. Kovacs preserved that issue for appeal.

C.J. § 9–109(b) states:

> Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or his authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental or emotional disorder.

C.J. § 9–109(c) provides:

> If a patient is incompetent to assert or waive this privilege, a guardian shall be appointed and shall act for the patient.

In *Nagle*, the Court of Appeals construed § 9–109(c) to mean that in a custody dispute

> when a minor is too young to personally exercise the privilege of nondisclosure, the court must appoint a guardian to act, guided by what is in the best interests of the child.... [T]he parents, jointly or severally, may neither agree nor refuse to waive the privilege on the child's behalf.

*Nagle*, 296 Md. at 128, 460 A.2d 49.

We agree with Mrs. Kovacs that the patient-psychologist privilege of a minor cannot be waived during a custody hearing, even when the parents agree, unless the chancellor appoints a guardian to make that decision. In this case, it is at least arguable that the information reported by Dr. Susskind is not privileged. Section 9–109(a)(3) defines a "patient" as a "person who communicates or receives services regarding the diagnosis or treatment of his mental or emotional disorder from a psychiatrist [or] licensed psychologist...." In his Evaluation Report prepared for the Beth Din, Dr. Susskind stated:

> The Kovacs family were first referred to Dr. Susskind by the Rabbinic Court in April, 1991, after a long history of marital discord and involvement with other mental health and pastoral counselors. The couple had requested binding arbitration from the [rabbinic] court concerning divorce and custody of their six children. The [rabbinic] court asked Dr. Susskind's opinion with regard to whether a divorce should be granted, whether marital therapy might sustain the marriage, and what the disposition of the children should be in the case of divorce.
>
> From May 3, 1991, until April 5, 1992, I have spent approximately 67 hourly sessions meeting with members of the family, both jointly and individually. The bulk of the meetings involved joint sessions with both parents.... In addition, I have had [the Kovacs'] permission to confer with [the] Rabbis, as well as with some of the mental health professionals who have counseled them. It has been clear to the Kovacs, from the time of our initial meeting, that the

content of our sessions was not confidential, in that my conclusions would be shared with the Rabbinic Court.

Dr. Susskind's statement tends to indicate that the children were not patients of Dr. Susskind for the purpose of diagnosing or treating any mental or emotional disorder. It would appear from his report that the family had received diagnosis and treatment from other mental health professionals and that Dr. Susskind acted as a consultant to the Beth Din, not as a treating doctor for the mental or emotional problems of the children.

■ We need not decide whether the court erred in receiving Dr. Susskind's report in violation of the Kovacs children's privilege of confidentiality under C.J. § 9–109, however. Dr. Susskind's report to the Beth Din primarily concerned matters relating to child custody. Judge Angeletti may have accepted the report as part of the Beth Din's arbitration decision, but he clearly did not rely upon it or any other evidence in making *his* decision; he adopted the Beth Din's arbitration award without exercising any independent decision making of his own. Since we are reversing the custody portions of the divorce judgment for that reason, any error in receiving the Susskind report without first appointing counsel for the children is harmless as to Mrs. Kovacs, and no claim is made by her that the privacy rights of the children have been invaded.

*Appointment of Fact-finder by the Court*

■ Mrs. Kovacs argues that Judge Steinberg improperly appointed Mr. Meranski as the court's fact-finder to make recommendations as to custody and visitation. In appointing Mr. Meranski, Judge Steinberg stated:

I have to make the decisions here and I don't think I have enough information and facts to base it on. Its [sic] not unusual, its [sic] no[t] unheard of for the Court to seek out other witnesses, expert witnesses especially so long as there are no *ex parte* communications, so long as all communications from the expert are made directly to the Court.

Mrs. Kovacs apparently contends that in a custody matter only a mediator as provided for by Md.Rule S73A or a domestic relations master as provided for by Md.Rule S74A may be appointed by the chancellor to aid in fact-finding or making recommendations. In her view, the appointment of someone outside the court system requires remand.

Although, to our knowledge, this issue has not been adjudicated in Maryland, courts from other jurisdictions have upheld the right of the chancellor to appoint an expert outside the court system to make recommendations concerning the beneficial interests of the children, so long as the chancellor exercises his independent judgment and makes the final decision. *See, Hamel v. Hamel,* 489 A.2d 471, 474 (D.C.App.1985) (trial court could receive an expert recommendation for an appropriate visitation schedule and did not improperly delegate the trial court's own judicial responsibilities to determine visitation rights after requiring the mother to consult with a court-designated psychiatrist before ruling on the mother's motion to establish her visitation rights as noncustodial parent); *Young v. Young,* 370 N.W.2d 57, 65–66 (Minn.App.1985) (trial court did not improperly delegate judicial authority to court-appointed expert where expert's recommendation was subject to court's supervision and its independent decision making authority). We agree with those courts. As reflected in the record, Judge Steinberg did not blindly adopt Mr. Meranski's recommendations. We are convinced that the chancellor exercised independent judgment in reaching his final decision and did not commit reversible error in doing so.

### *Modification of Pendente Lite Custody Order*

Mrs. Kovacs argues that Judge Steinberg committed reversible error by failing to make a proper ruling on Mr. Kovacs's petition for modification of custody. At the time Mr. Kovacs filed his petition, Mrs. Kovacs had *pendente lite* custody of all six children. While the children were in her custody, the sexual abuse incident occurred between two of the children. By an order of the DSS, the four youngest children were removed from the care of Mrs. Kovacs and placed in the

custody of Mr. Kovacs. An evidentiary hearing was scheduled in the circuit court, but was delayed for two months. At the evidentiary hearing, Judge Steinberg appointed Mr. Meranski as a fact-finder to gather information and report to the court. Three months after that hearing, Mr. Meranski recommended to Judge Steinberg that the split custody resulting from the action of the DDS remain in force. Judge Steinberg adopted Mr. Meranski's recommendation and continued the division of the custody pending the outcome of this appeal.

Mrs. Kovacs contends that Judge Steinberg erred by adopting Mr. Meranski's recommendation. She alleges that Judge Steinberg abused his discretion, effectively modifying custody by allowing the custody change that was made after the report of sexual abuse to remain as the status quo without a showing by Mr. Kovacs of a change of circumstances. As support for her argument, Mrs. Kovacs quotes *Domingues v. Johnson*, 323 Md. at 492–93, 593 A.2d 1133, for the proposition that custody "will ordinarily not be modified except upon a showing of a change in circumstances justifying a change in custody to accommodate the best interest of the child." She also states, without support, that Mr. Kovacs, as the movant on the Petition for Modification of Custody, had the burden of proving changed circumstances to support his petition.

We believe that Mrs. Kovacs has misconstrued the case law. *Domingues v. Johnson* involved a change of custody after the court had already adjudicated the matter under a judgment for absolute divorce. Here, however, there was no valid final adjudication of "permanent" custody of the children. Although the six children were originally in the care of Mrs. Kovacs, that custody was based upon the temporary, *pendente lite* order issued by Judge Angeletti. The Judgment for Absolute Divorce superseded his *pendente lite* order, but when this Court issued its stay of the Judgment for Absolute Divorce concerning custody and possession of the marital home, the *pendente lite* order was revived. Thus, when Mr. Kovacs filed his petition for modification of custody, the *pendente lite* order of Judge Angeletti was in effect. In *Leary*

*v. Leary,* 97 Md.App. 26, 627 A.2d 30 (1993), this Court held that when a *pendente lite* order for custody has been issued, it is not necessary to show a change of circumstances to modify that order as long as there has not been a final adjudication of the custody dispute. *Leary,* 97 Md.App. at 53, 627 A.2d 30; *Kerns v. Kerns,* 59 Md.App. 87, 97, 474 A.2d 925 (1984). The proper standard the court should use to determine a change of custody from a *pendente lite* order is and continues to be what is in the best interest of the child. *Leary,* 97 Md.App. at 53, 627 A.2d 30, citing *McCready v. McCready,* 323 Md. 476, 481, 593 A.2d 1128 (1991). Consequently, there was no need for Mr. Kovacs to show a change of circumstances before Judge Steinberg could modify the previous *pendente lite* custody order.

### Modification of Child Support

Finally, Mrs. Kovacs alleges that Judge Steinberg erred in refusing to grant her motion for additional child support. Mrs. Kovacs's motion was filed after this Court entered its stay of the Judgment for Absolute Divorce. That stay had no effect on the award of child support in the Judgment for Absolute Divorce, because the stay only pertained to custody and possession of the marital residence. The request for modification of child support was, therefore, a motion to modify child support as established in the Judgment for Absolute Divorce.

To modify support payments for the benefit of a child, a party must show a change of circumstances since the entry of the judgment sought to be modified. *Reese v. Huebschman,* 50 Md.App. 709, 712, 440 A.2d 1109 (1982). In this case, Judge Steinberg was presented with a motion to modify the provision for child support in the divorce judgment then in effect. His refusal to modify that provision was correct, because no change of circumstances had been shown. The underlying support provision in the Judgment of Absolute Divorce, however, was erroneous, for two reasons: (1) it was based entirely upon the decision of the Beth Din, without the exercise of the independent discretion by the chancellor that is

required of rulings affecting the best interests of children, and (2) it ignored the statutory child support guidelines established by Title 12, subtitle 2 of the Family Law Article of the Maryland Code. Section 12–202 of that article specifically requires a court to use the guidelines in any proceeding to establish or modify child support, whether *pendente lite* or permanent. There is a rebuttable presumption that the use of the guidelines will result in the correct amount of child support to be awarded, but the presumption may be rebutted by evidence showing that application of the guidelines would be unjust or inappropriate in a particular case. In making that determination, the court may consider certain factors set forth in § 12–202(a)(2)(iii), but if it determines that application of the guidelines would be unjust or inappropriate, it must make a written finding or specific finding on the record stating the reasons for departing from the guidelines and

 A. the amount of child support that would have been required under the guidelines;

 B. how the order varies from the guidelines;

 C. how the finding serves the best interests of the child[ren]; and

 D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed.

Since the court did not even consider the guidelines when it adopted the Beth Din's award of child support and incorporated it into the divorce judgment, we must vacate the child support provisions of that judgment and remand for further consideration of that issue in addition to the issues of custody and visitation.

During the pendency of this appeal, appellant filed a motion for an order directing appellee to distribute retirement funds pursuant to the Judgment for Absolute Divorce. We held the motion in abeyance awaiting the outcome of the appeal.

Having now upheld the Judgment for Absolute Divorce with respect to all issues except those relating to the best interests of the children, we now hold appellant is entitled to enforce-

ment of the Judgment for Absolute Divorce with respect to distribution of appellee's retirement fund. Enforcement, however, is more properly the function of the circuit court, to which we shall defer.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.