16 A.3d 980

**Julie LANG**

v.

**Zion LEVI.**

**No. 1425, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

April 1, 2011.

---

C. Allen Foster (David S. Panzer, Greenberg Traurig LLP, on the brief), Washington, DC, for Appellant.

Zion Levi, Pro Se, Chevy Chase, MD, for Appellee.

Panel: DEBORAH S. EYLER, ZARNOCH, LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

ZARNOCH, J.

This appeal challenges the correctness of the reduction of a claimed marital award by a Jewish arbitration panel, the Beth Din,[1] and the outright denial of an award on post-arbitration applications by a representative of the Av Beth Din.[2] Appellant Julie Lang and Appellee Zion Levi signed a prenuptial agreement, which stated in part that Levi had an obligation to pay Lang $100 a day from the time they no longer resided

---

1. The Beth Din of America is a rabbinical court. One of the purposes of the Beth Din is to "provide a forum where adherents of Jewish law can seek to have their disputes resolved in a manner consistent with the rules of Jewish law." Rules and Procedures of the Beth Din of America, Preamble (a).

2. The Av Beth Din is "the most senior jurist who may join in the adjudication of cases or advise the presiding *dayanim* [judges]. The Av [B]eth [D]in is a highly respected *rabbi* and *posek* [decider] ..." *New World Encyclopedia*, Beth Din, *http://www.newworldencyclopedia.org/entry/Beth_Din* (last visited February 16, 2011). *See also Tal Tours (1996) Inc. v. Goldstein,* 9 Misc.3d 1117(A), 808 N.Y.S.2d 920 (Sup.Ct. 2005) (The Av Beth Din is "the supervisor of the Beth Din.").

together until Levi granted Lang a *get,* a Jewish divorce. They also signed an arbitration agreement giving the Beth Din the authority to decide any disputes that arose regarding this prenuptial agreement.

When the marriage fell apart, Lang and Levi appeared before the Beth Din in 2008. The panel rejected Lang's claim that she was entitled to a cumulative amount of $108,000 in stipulated per diems, but granted her an award of $10,200. However, the award was later reduced to zero by a representative of the Av Beth Din who found, on the basis of Jewish law, that Levi was not obligated to pay any amount to Lang. In 2009, Lang petitioned the Circuit Court for Montgomery County to vacate the arbitration award, and Levi moved for summary judgment. The circuit court found no grounds to vacate the award, and granted Levi's motion. For the reasons set forth below, we affirm the decision of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

Appellant Julie Lang and Appellee Zion Levi were married on June 22, 2003, and entered into both a secular marriage under Maryland law and a Jewish marriage. That same day, the parties signed a prenuptial agreement and an arbitration agreement. The prenuptial agreement provided that if the parties did not continue to reside together, Levi would pay Lang $100 a day from the day they no longer resided together until the end of their Jewish marriage. The arbitration agreement provided that if the parties no longer lived together as husband and wife, they authorized an arbitration panel, the Beth Din, to decide all issues involving the Jewish divorce and premarital agreements, including monetary disputes. This agreement stated: "The decision of the Bet Din [3] shall be made in accordance with Jewish Law (Halakhah) and/or the

---

3. Both the prenuptial agreement and the arbitration agreement use the spelling "Bet Din," however the organization's title is spelled "Beth Din." For consistency, we will use the latter spelling throughout this opinion.

general principles of arbitration and equity (Pesharah) customarily employed by rabbinical tribunals."

The parties had one child together, Victoria, who was born on September 21, 2004. By 2005, the marriage had deteriorated and on October 1, 2005, the parties separated. In 2006, Levi sued for a divorce and Lang counter-claimed, requesting sole custody, alimony, attorney's fees, determinations regarding property, and a monetary award. The trial court entered a consent order resolving custody and visitation disputes. Around the same time, the parties agreed that Levi would pay *pendente lite* child support.

The circuit court entered a decree of absolute divorce on March 28, 2008. The court denied Lang's request for alimony, ordered the parties to evenly divide their child's school expenses, required Levi to provide health insurance for the child, and denied both parties' requests for attorney's fees. This Court affirmed the trial court's decision on June 19, 2009. *Levi v. Levi*, No. 526, September Term 2008 (June 19, 2009).

Levi also petitioned the Beth Din to arrange the *get*. The Beth Din notified Lang on July 3, 2008 and requested she contact the Beth Din if she wished to participate. When she agreed, the Beth Din scheduled an arbitration session for September 17, 2008 before a panel of three rabbis. At the session, the *Beth Din* heard arguments on both the prenuptial agreement and the *get*. At that time, Levi offered and Lang accepted the *get*. Six weeks later, the panel addressed the remaining issue and rejected as "unjust and improper" Lang's claim for a per diem obligation of $108,000, computed up to the moment she was summoned to the Beth Din.[4] Finding that the purpose of the prenuptial agreement was to ensure the timely offering of a *get* by the husband, the panel concluded that Lang was entitled to $100 a day from October 1, 2005, when the parties no longer resided together, to January 10, 2006,

---

4. Under Section 28 of the Rules and Procedure of the Beth Din of America, the "Beth Din may grant any remedy or relief it deems just and equitable and within the scope of the agreement of the parties."

when Levi first offered her a *get*, a cumulative amount of $10,200.

In November 2008, Lang and Levi both applied for modification of the decision under the Rules and Procedures of the Beth Din. Rabbi Mordechai Willig, the Segan [Assistant] Av Beth Din, was designated to hear the post-arbitration applications. Although he was not present when evidence was taken before the panel, and he did not entertain argument or hear additional evidence, he rendered a decision. In a March 30, 2009 ruling, he rejected the panel's determination and eliminated the monetary award to Lang. Rabbi Willig held that he had authority to modify the decision under Section 1(b) of the Beth Din Rules and Procedures.[5] He reasoned that under Jewish law, even when language seems unambiguous, the intent of the parties is still relevant to the interpretation of a contract. The Segan Av Beth Din also noted that "a beth din is especially empowered to avert an unintended consequence that may result from a literal reading of a contractual provision when the beth din is authorized to decide a case based on the equities of the matter."[6] For these reasons, he concluded that the intent of the parties in the present case was not "to provide the wife with a mechanism to demand additional money beyond any negotiated or court imposed settlement." Instead, the intent of the parties was to require Levi to pay economic costs if he failed to give a timely *get*. Because Levi was willing to give Lang a *get* soon after the parties stopped residing together and Lang refused, she was not entitled to

---

5. Section 1(b) states, "the obligations of the Av Beth Din or his designee shall be as prescribed in these Rules. Every obligation of the Av Beth Din may be delegated to a designee at the discretion of the Av Beth Din. In the absence of the Av Beth Din or his direction, the Segan (Assistant) Av Beth Din shall function as the Av Beth Din. In the absence of the Segan Av Beth Din, the Menahel (Director) of the Beth Din shall function as the Av Beth Din." Rules and Procedures of the Beth Din of America, Section 1(b). There are additional rules that bear on the authority of the Av Beth Din. *See* pp. 166–67, 16 A.3d at 987–88, *infra*.

6. Rabbi Willig also pointed to the language of the arbitration agreement providing for a decision based on general principles of equity. *See* pp. 157–58, 16 A.3d at 982, *supra*.

any award.[7] Further, because Lang consistently failed to demand a monetary award that was supposed to be paid in weekly installments, it was "likely" that she "implicitly waived" her right to it. Finally, Lang already participated in a secular court proceeding on her financial divorce claims and Rabbi Willig found that "[g]enerally, a party that appears before a secular court may not later bring a claim in beth din."

On April 29, 2009, Lang brought an action in the Circuit Court for Montgomery County petitioning the court to vacate the decisions of the Beth Din and Av Beth Din, and alleging breach of contract under the Jewish prenuptial agreement. On July 28, 2009, the court granted Levi's motion for summary judgment, finding that the parties submitted to the jurisdiction of the Beth Din for arbitration in an arbitration agreement enforceable in Maryland, that the Beth Din had the authority to interpret Jewish law and to delegate to Rabbi Willig the rendering of a decision under the Rules and Procedures of the Beth Din, and that the Av Beth Din's decision was not "an irrational decision on a question of law that is so extraordinary that it is tantamount to the arbitrator's exceeding his powers to warrant the court's intervention." Lang timely noted this appeal.[8]

## QUESTIONS PRESENTED

Appellant presents the following question for our review: [9]

---

**7.** Rabbi Willig indicated that the husband's financial obligation "was governed at times" by her "implied forgiveness" when she "sought to restore marital harmony" by not accepting the *get*.

**8.** The only issue Lang raises on appeal is the circuit court's grant of summary judgment with regard to her petition to vacate the *Beth Din's* award, not her breach of contract claim.

**9.** We have reworded and consolidated Lang's questions presented. The questions as phrased in her brief are:

 I. Was the *Beth Din* panel's award and Rabbi Willig's reversal of that award "rationally inferable" from the contract's plain terms?

 II. Did Rabbi Willig's reversal of the original award draw authority from the underlying contract?

Did the circuit court err by denying appellant's petition to vacate the arbitration award?

For the reasons that follow, we shall affirm the decision of the circuit court.

## DISCUSSION

### I. Standards of Review

#### A. Summary Judgment

Lang argues that, for various reasons, the circuit court should have vacated the Beth Din's decision instead of granting summary judgment in favor of Levi. A circuit court should grant summary judgment only when "there is no genuine dispute as to any material fact" and the moving "party is entitled to judgment as a matter of law." Md. Rule 2–501(a). On appeal, this Court reviews a trial court's grant of summary judgment *de novo*. *Mandl v. Bailey*, 159 Md.App. 64, 82, 858 A.2d 508 (2004).

#### B. Vacating an Arbitration Award

 Because the Beth Din is an arbitration panel, we must also consider the standard for vacating an arbitration panel's decision. The Maryland Uniform Arbitration Act ("MUAA"), Md.Code (1974, 2006 Repl.Vol.) Courts and Judicial Proceedings Article (CJP), §§ 3–201 *et seq.* governs the enforceability of arbitration agreements. *Mandl,* 159 Md.App. at 85, 858 A.2d 508. The MUAA "severely restrict[s] the role the courts play in the arbitration process" in order to further the "policy [of] favoring arbitration as an alternative method of dispute resolution," which conserves judicial resources. *Id.* Under the MUAA, a court may only vacate an arbitration award where:

---

III. Were material facts in dispute concerning Rabbi Willig's sole authority to modify the original decision of the *Beth Din* under Jewish Law, which governs the Arbitration Agreement, pursuant to the Uniform Judicial Notice of Foreign Law Act, Md.Code Ann., Cts. & Jud. Proc. § 10–501 *et seq.?*

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing . . . as to prejudice substantially the rights of any party;

(5) There was no arbitration agreement . . . the issue was not adversely determined in proceedings . . . and the party did not participate in the arbitration hearing without raising the objection.

CJP § 3–224(b). It is important to emphasize that a court's power to vacate an arbitration award is "narrowly confined" to the above circumstances. *Mandl*, 159 Md.App. at 85, 858 A.2d 508. The circuit court operates under a "tightly restricted scope" when reviewing an arbitrator's decision under the MUAA. *Id.* at 92, 858 A.2d 508. This Court has articulated the standard for circuit court review:

[F]actual findings by an arbitrator are virtually immune from challenge and decisions on issues of law are reviewed using a deferential standard on the far side of the spectrum away from a usual expansive de novo standard. An arbitrator's mere error of law or failure to understand or apply the law is not a basis for a court to disturb an arbitral award. Only a completely irrational decision by an arbitrator on a question of law, so extraordinary that it is tantamount to the arbitrator's exceeding his powers, will warrant the court's intervention.

*Id.* at 92–93, 858 A.2d 508. Here, Lang alleges only that the Beth Din exceeded its powers, and that its decision was irrational. She has the burden to prove these assertions. *Id.* at 86, 858 A.2d 508.

## II. The Beth Din's Authority

### A. The Parties' Intent & the Plain Language of the Prenuptial Agreement

To begin, Lang argues that we must vacate Rabbi Willig's decision reversing the Beth Din's award because it is "irrational" based on the plain language of the parties' contract. She relies primarily on two Maryland cases—*O-S Corp. v. Samuel A. Kroll, Inc.*, 29 Md.App. 406, 348 A.2d 870 (1975), and *Snyder v. Berliner Constr. Co.*, 79 Md.App. 29, 555 A.2d 523 (1989)—for the proposition that if an arbitrator does not follow the plain language of the parties' contract, the arbitrator has exceeded his authority and the decision was irrational, requiring it to be vacated. *O-S Corp.*, 29 Md.App. at 410, 348 A.2d 870; *Snyder*, 79 Md.App. at 37, 555 A.2d 523. Lang argues that the prenuptial agreement plainly states that from the time the parties no longer reside together until the delivery of the *get*, Levi must pay her $100 per day under any circumstances. Because the Beth Din's award ignored this plain language, she asserts, it was thus irrational and must be reversed.

 In our opinion, the Beth Din appropriately exercised its authority within the confines of its own rules and procedures, which both Lang and Levi agreed to be subject to under the arbitration agreement. Under that agreement, the parties conferred upon the Beth Din the authority to settle any marital disputes, including monetary disputes, between the parties "in accordance with Jewish law (Halakhah) and/or general principles of arbitration and equity (Pesharah) customarily employed by rabbinical tribunals." [10] Under Jewish law, the provision in the contract that is the basis for Lang's claim for $108,000 was intended to facilitate the timely delivery of a *get*, preventing what is referred to as *agunah* or

---

**10.** The parties' agreement with its "and/or" language conferred broader authority on the Beth Din than the rules of the tribunal, which authorized relief if permitted by equity *and* the agreement. *See* n. 4, *supra.*

"chained wives." This is an issue in the Orthodox Jewish community that arises because:

> [U]nder traditional Jewish law, a civil divorce does not dissolve the marriage. Only a religious divorce, provided by a signed writ of divorce called a *"get,"* completely dissolves the marriage for a person who wishes to remarry within the Orthodox Jewish religion. By tradition, only the husband has the power to grant or withhold the *get.* The rabbinic authorities may not compel the husband to grant the *get* if he does not wish to do so. Until a woman receives a *get* she may not remarry within her religion. If she does remarry without the *get,* the new marriage is not considered valid. The woman is considered an adulterer, and any children from the new marriage are considered illegitimate.

Fiscal and Policy Note on House Bill 324 (2007).[11] Thus, the intent of the parties in signing the $100–a–day–penalty was to prevent Levi from withholding a *get* from Lang. The provision was not necessary here because Levi was willing to give Lang a *get* and Lang was reluctant to accept it. Requiring Levi to pay Lang any monetary award under the provision, Rabbi Willig found, would be an "unintended consequence" of a "literal reading of a contractual provision when the beth din is authorized to decide a case based on the equities of the matter." As Segan Av Beth Din, he determined that it would be inequitable under Jewish law to require any payment because Levi "was willing to give a *Get* early in the process." The parties agreed to arbitrate in the Beth Din and granted that body authority to interpret as well as determine matters of Jewish law, including a consideration of the equities. Since this Court cannot interpret Jewish law or gauge equities as

---

**11.** At least one state has required parties to an action for absolute divorce or annulment to affirm to a court that steps have been taken to obtain a *get,* thereby removing any religious barriers to remarriage. *See* N.Y. Dom. Rel. Law § 253 (2010). In Maryland, similar legislation was introduced during the 1997, 1998, 1999, 2000, and 2007 sessions, but did not pass. *See* House Bill 324 (2007); House Bill 1099 (2000); House Bill 430 (1999); House Bill 415 (1998); House Bill 1134 (1997), all sponsored by Delegate Samuel I. Rosenberg.

determined by rabbinical tribunals, we decline to vacate the decision of the Beth Din as contrary to the parties' agreement.

We further point out, as Levi notes, that Rabbi Willig's interpretation of the $100–a–day penalty is consistent with the prenuptial agreement. The very first line in the instructions for the agreement states: "This Agreement is intended to facilitate the timely and proper delivery of a *get.*" Thus, the agreement was not designed to confer a windfall on a wife, who refuses to receive the *get,* but rather it was intended only to prevent Lang from becoming a "chained wife."

### B. Authority of the Segan Av Beth Din to Modify Panel's Award

■ Lang argues that Rabbi Willig's decision reversing the Beth Din's award was beyond his authority under the arbitration agreement. We disagree for two reasons. First, the parties agreed to submit any marital disputes to the Beth Din and abide by its rules and procedures, which include the authority of the Av Beth Din to reverse the panel's decision. *See Elmora Hebrew Center, Inc. v. Fishman,* 125 N.J. 404, 593 A.2d 725, 729–32 (1991) (finding parties are bound by Beth Din's decision because they agreed to submit their disputes to the Beth Din). Second, because of the religious nature of the Beth Din, the First Amendment prohibits us from determining whether reversal by the Av Beth Din is appropriate under Jewish law and the principles of equity as determined by a religious tribunal. *See id.* (finding that the First Amendment does not permit civil courts to decide religious doctrine). Thus, we do not find that Rabbi Willig was without authority to reverse the panel's decision.

### 1. Beth Din's Rules and Procedures Allow for Reversal

From our review of the record, Rabbi Willig as the Segan Av Beth Din had authority to reverse the panel's decision under the Beth Din's rules, to which Lang agreed to be bound. Rabbi Willig was delegated the task of reviewing the applications for modification as part of the appellate arbitration process within the Beth Din. He reversed the decision of the

three-rabbi panel awarding Lang $10,200 and instead, eliminated the award entirely. Section 31(a)(e) of the rules gave him the authority to modify the award. The Rule states:

> On written application of a party to the Beth Din within twenty (20) days after delivery of the award to the applicant, the Beth Din may modify the award if . . . the Av Beth Din determines that a provision of the Award is contrary to Jewish Law.

This authority is supplemented, if not strengthened, by other provisions of the Rules. Under Section 1(a), the Av Beth Din serves "as the supervisor of the Beth Din and *all of its functions*" (emphasis added) and requires the parties to "appoint the Av Beth Din or his designee as the administrator in a Beth Din proceeding or hearing." *See also* n. 2, *supra.* Section 39 provides: "The Av Beth Din shall interpret and apply these Rules insofar as they relate to the powers of the Beth Din or any individual arbitrators (dayan)." Lang contends that the Av Beth Din was not empowered to reverse the decision of the panel. However, the Rules of the Beth Din clearly indicate otherwise.

The thrust of Lang's challenge to the Av Beth Din's reversal is that Rabbi Willig: 1) made several impermissible "factual determinations" regarding the intent of the parties, the implied waiver of the $100 per day penalty and, the impact of Lang's secular proceedings and 2) nullified the agreement of the parties.[12] Because Rabbi Willig's determinations were framed in the alternative, any one of the asserted grounds, if it is not an irrational decision on a question of law, would defeat Lang's claim. His primary conclusion, which balanced the intentions of the parties with principles of equity, was not an irrational legal decision.

At the outset, we disagree that the Segan Av Beth Din made impermissible factual determinations. Giving a fair reading to Rabbi Willig's decision, we discover no new factual

---

12. The last contention is addressed at pp. 163–66, 16 A.3d at 985–87, *supra.*

findings.[13] His decision was based on the record already created. To be sure, legal conclusions different from those of the panel were reached, but that is within the province of the Av Beth Din.

Rabbi Willig cited Jewish legal precedent for his principal conclusions. But citations aside, the rationality of his determinations regarding the intent of the parties reflect basic common law principles. *See e.g., Gibbs v. Meredith,* 187 Md. 566, 570, 51 A.2d 77 (1947) ("If the words of a contract are susceptible of two constructions, one of which would produce an absurd result, and the other would carry out the purpose of the contract, the latter construction should be adopted."); *Highley v. Phillips,* 176 Md. 463, 471, 5 A.2d 824 (1939) (Words in a contract will be given their ordinary meaning unless an unreasonable or absurd consequence would result from so doing.) [14] The same is true of the Segan Av Beth

---

13. If the Av Beth Din had altered a factual finding of the panel, it is unclear whether this would authorize a secular court to set aside the arbitration decision. In *Kovacs v. Kovacs,* 98 Md.App. 289, 304–05, 633 A.2d 425 (1993), we said that if arbitration proceedings of the Beth Din "do not conform to notions of basic fairness or due process, the court would be justified in refusing to confirm an award." In addition, it has been said of one civil judge's alteration of facts found by another:

> Allowing a successor judge to vacate and annul a finding of fact made by the trial judge is generally considered improper, because it would permit the successor to grant a new trial. In cases tried without a jury, a party litigant is entitled to a decision on the facts by a judge who heard and saw the witnesses, and a deprivation of that right constitutes a denial of due process.

46 Am.Jur.2d, *Judges* at § 33 (2006). On the other hand, in *Kovacs,* the wife contended "that the Beth Din relied on evidence not introduced during the proceedings," 98 Md.App. 289, 633 A.2d 425, and this Court said "her complaints do not mount up to a denial of basic fairness that would mandate refusal of the court to confirm the award." *Id.* at 305–06, 633 A.2d 425. In addition, in a *Layman's Guide to Dinei Torah. (Beth Din Arbitration Proceedings), www.bethdin.org/forms-publications. asp* at 5, the Beth Din notes that when requests for modification are made, "[d]ecisions are only overturned if the appellate judge reviewing the case finds a clear mistake in the original decision, but not merely if the judge would have decided differently himself."

14. Because we believe it cannot be said that Rabbi Willig acted irrationally on this question of law, we do not reach the issue of whether his

Din's reliance on the impact of equitable principles, particularly as to Lang's failure to respond to Levi's offer of the *get*. *See* Catherine McCauliff, 8 *Corbin on Contracts* at § 32.3 (1999) (discussing the nonperformance of a condition as an "equitable defense" to breach of a contract.) In short, we reject Lang's contention that Rabbi Willig's conclusions regarding the intent of the parties and the balance of equities are a basis for vacating the Beth Din decision.

## 2. First Amendment Concerns

Were we less convinced of the rationale of Rabbi Willig's determination, we would still find it exceedingly difficult to scrutinize the Beth Din decision in the manner Lang urges. As noted earlier, the standard for vacating an arbitrator's decision is a narrow standard to begin with. The addition of the religious context further narrows the standard to make our intervention nearly impossible. As has been clear since secular courts were first faced with intrachurch property disputes, courts have jurisdiction over these cases, but are prohibited from interpreting the underlying religious dogma. Michael C. Grossman, Note, *Is This Arbitration?: Religious Tribunals, Judicial Review, and Due Process,* 107 Colum. L.Rev. 169, 170 (2007). This is known as the religious question doctrine. *Watson v. Jones,* 80 U.S. 679, 727, 13 Wall. 679, 20 L.Ed. 666 (1871) (finding religious questions should be decided by religious authority). While the parties do not raise the doctrine on appeal, we cannot ignore it when considering the extent of our reach into the Beth Din's final decision.

The Supreme Court has held that both the Free Exercise and Establishment Clauses of the First Amendment prohibit judicial review of religious questions. *See* Grossman, *supra,* at 183. As the Court articulated in *Serbian Eastern Orthodox Diocese v. Milivojevich:*

> [C]ivil courts do not inquire whether the relevant (hierarchical) church governing body has power under religious law

---

determinations regarding implied waiver and Lang's secular proceedings are a sufficient basis to overturn the panel award.

(to decide such disputes).... Such a determination ... frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power within a (hierarchical) church so as to decide ... religious law (governing church policy) ... would violate the First Amendment in much the same manner as civil determination of religious doctrine.

426 U.S. 696, 708–09, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (citing *Md. & Va. Churches v. Sharpsburg,* 396 U.S. 367, 369, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970) (internal quotations omitted)). *See also Downs v. Roman Catholic Archbishop of Baltimore,* 111 Md.App. 616, 621, 683 A.2d 808 (1996) ("[C]ivil courts have no authority to second-guess ecclesiastical decisions made by hierarchical church bodies.") One scholar notes that when a court is asked to decide whether an arbitrator exceeded his authority, and the arbitrator relied on religious principles, the court is precluded from making that determination:

> Only a religious authority may be able to decide the scope of an orthodox Rabbi.... While a court can review whether parties actually agreed to a certain strand of law by reading a contract's terms, it would not be able to review whether the arbitrator exceeded his authority without delving into religious doctrine.

Grossman, *supra* at 197–97.

Therefore, we cannot delve into whether under Jewish law there is legal support for Rabbi Willig's reversal of the panel's decision. *See Meshel v. Ohev Sholom Talmud Torah,* 869 A.2d 343, 353 (D.C.2005) ("[T]he Establishment Clause precludes civil courts from resolving disputes involving religious organizations whenever such disputes affect religious doctrine or church polity or administration"); *Neiman Ginsburg & Mairanz, P.C. v. Goldburd,* 179 Misc.2d 125, 684 N.Y.S.2d 405, 407 (N.Y.1998) (finding civil court had no power to review Beth Din's decision that it was appropriate to issue a *seruv* under Jewish law). As far as the rigor of our review is

concerned, this is an area where treading lightly is not enough. Here, we cannot tread at all.

## III. Protections of the Maryland Uniform Arbitration Act

█ Lang also contends that the Beth Din denied her "basic procedural protections" afforded to her by the MUAA. Specifically, she asserts that "the arbitrators did not allow [her] counsel to cross-examine witnesses at any time during the hearing," but rather "required counsel to submit its questions for the witnesses to the panel," and the panel decided which questions to ask. She also argues that "the arbitrators did not allow [her] to be questioned by her own attorney on direct examination," and that the panel "supplied answers" for her. We disagree because the MUAA's procedural requirements do not apply to these proceedings.

█ Maryland courts have consistently held that an arbitration proceeding in a Beth Din is valid, even if it does not comply with the requirements of the MUAA, as "long as the litigants voluntarily and knowingly agree to the arbitration procedures." *Kovacs*, 98 Md.App. at 304, 633 A.2d 425 (1993). *See also Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 33 n. 1, 720 A.2d 912 (1998) ("Maryland courts recognize the validity of arbitration proceedings at a Beth Din, even when the proceedings are not in strict compliance with the Act, so long as the parties knowingly and voluntarily agree to the arbitration procedures."). Of course, "if arbitration proceedings do not conform to notions of basic fairness or due process, the court would be justified in refusing to confirm an award." *Kovacs*, 98 Md.App. at 305, 633 A.2d 425. *See also Mandl*, 159 Md.App. at 87, 858 A.2d 508.

In the parties' Arbitration Agreement, Lang agreed that "should a dispute arise between the parties after they are married," she and Levi would "refer their marital dispute" to the Beth Din. There is no evidence that Lang did not voluntarily or knowingly agree to be subject to the Beth Din's procedures, nor does Lang argue that it was not voluntary or knowing. Both the prenuptial and arbitration agreements

recite that the parties had been given the opportunity to consult with their own legal advisors. Because the parties knowingly and voluntarily agreed to arbitrate their disputes under "Jewish substantive and procedural law" they "expressly waived application of Maryland law and the procedural aspects of the [MUAA]." *See Kovacs,* 98 Md.App. at 305, 633 A.2d 425.

■ The Beth Din's procedures also complied with basic notions of fairness and due process. The arbitration panel's handling of witnesses was also at issue in *Kovacs,* where the appellant argued that "counsel was not permitted to . . . cross-examine witnesses . . . or otherwise represent her effectively." 98 Md.App. at 302–03, 633 A.2d 425. In *Kovacs,* we held that the appellant's "allegations of procedural defects . . . do not mount up to a denial of basic fairness that would mandate refusal of the court to confirm the award." *Id.* at 305–06, 633 A.2d 425.

Our review of the record shows that Lang had a fair hearing before the Beth Din, where her counsel was able to make an opening statement and question witnesses by presenting questions to the panel, which in turn instructed the witnesses to answer. Counsel was also given an opportunity to respond to Levi's arguments and to instruct Lang. The record shows that the panel was not "supplying answers" for Lang or precluding her own attorney from questioning her, as she contends. Rather, the panel was merely repeating an answer Lang had given earlier in the proceedings. Because the arbitration complied with basic notions of fairness and due process, and Lang voluntarily and knowingly agreed to be subject to them, we do not see this contention as a reason to vacate the arbitration award.

## IV. Evidence of Applicable Jewish Law

■ Lastly, Lang asserts that the circuit court erred by granting summary judgment because "material facts were in dispute regarding the authority of [an] appellate arbitrator under the applicable Jewish law." Specifically, she argues

that Levi provided insufficient evidence of Jewish law under the Uniform Judicial Notice of Foreign Law Act, CJP § 10–501, *et seq.*, which was required because he "contend[ed] that Jewish [l]aw controls the terms of the Arbitration Agreement" and so "proper evidence of Jewish law must be submitted."

We do not think that any material facts remained in dispute, nor do we find that Levi was required to submit proper evidence of Jewish law. Proof of Jewish law is not required because, as we discussed above, we are prohibited under the First Amendment from interpreting any substantive or procedural Jewish law. As Levi correctly argues in response, "the only person authorized to explain the substance of Jewish law in the case here was the Beth Din." Thus, the trial court did not err in granting summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

