**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1042**

STAR DEVELOPMENT GROUP, LLC; HOPKINS HOSPITALITY
INVESTORS, LLC; HOPKINS INVESTORS, LLC,

    Plaintiffs - Appellants,

v.

DARWIN NATIONAL ASSURANCE COMPANY; CONSTRUCTURE
MANAGEMENT, INC.,

    Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge. (1:16-cv-01246-RDB)

Submitted: March 11, 2020        Decided: May 8, 2020

Before KEENAN, WYNN, and RICHARDSON, Circuit Judges.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Keenan
and Judge Richardson joined.

Kenneth K. Sorteberg, HUDDLES, JONES, SORTEBERG & DACHILLE, P.C.,
Columbia, Maryland, for Appellants. Adam M. Tuckman, WATT, TIEDER, HOFFAR &
FITZGERALD, LLP, McLean, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Plaintiffs-Appellants Star Development Group, LLC ("Star"), Hopkins Hospitality Investors, LLC, and Hopkins Investors, LLC (collectively, "Hopkins") appeal the district court's denial of their petition to vacate an arbitration award in favor of Defendants-Appellees Constructure Management, Inc. ("Constructure") and Darwin National Assurance Company ("Darwin"). Plaintiffs also appeal the district court's grant of attorneys' fees to Defendants. Conducting a deferential and circumscribed review of the arbitration decision under controlling law, we discern no legal or factual error sufficient to overturn the arbitration award. Nor do we find any error in the district court's grant of attorneys' fees. We thus affirm.

I.

A.

In 2013, Star and Constructure entered into a contract (the "Contract") for the construction of a Homewood Suites hotel in Laurel, Maryland.[1] Hopkins owns the property, Star was its construction and development manager, Constructure was the general contractor for the hotel's construction, and Darwin[2] served as Constructure's surety for performance and payment to Star and Hopkins under the Contract. The construction covered two distinct sections of the hotel: a tower portion containing the guest rooms, and a one-story area containing the lobby, restaurant, and meeting areas.

---

[1] The Contract consists of two documents, a "Standard Form of Agreement Between Owner and Contractor" and "General Conditions of the Contract for Construction." References to the "Contract" in this opinion encompass both.

[2] Darwin is now known as Allied World Specialty Insurance.

The Contract specified a maximum cost of $11 million and an original completion date of July 26, 2014 (the "Substantial Completion Date"). The construction was ultimately completed approximately one year later, on August 6, 2015.

B.

In 2016, Plaintiffs sued Defendants in Maryland state court for breach of contract. Defendants removed the case to the United States District Court for the District of Maryland on the basis of diversity. That court then stayed the case while the parties participated in arbitration pursuant to the Contract.

The parties asserted a variety of claims against each other before a panel of three American Arbitration Association construction arbitrators (the "Arbitration Panel"). Relevant to this appeal, following an eight-day hearing, the Arbitration Panel issued a final award (the "Award") denying Star's alleged $4 million in delay damages arising from the hotel's completion 376 days after the Substantial Completion Date. Star claimed that the delay was entirely Constructure's fault, while Constructure claimed the delay was excusable.

The Arbitration Panel held the parties concurrently responsible for the delay, reasoning that Star delayed completion of the one-story section while Constructure delayed completion of the tower section. Specifically, in the months and days leading up to the Substantial Completion Date, Star submitted numerous structural design changes to the one-story section, requiring Constructure to add extra steel supports. The Arbitration Panel thus attributed the delay in completion of the one-story portion to Star. As to the tower section, the Arbitration Panel found that the main delay arose from Constructure's

3

difficulty in managing its primary subcontractor. It thus attributed that delay to Constructure.

The Arbitration Panel then denied Star's delay damages claims as waived. In reaching this conclusion, the Arbitration Panel had to consider § 8.3.1.2 of the Contract. That section prevented Constructure from seeking a time extension for any delay to which it contributed:

> Notwithstanding Section 8.3.1.1, or anything to the contrary set forth in the Contract, in no event shall Contractor [Constructure] be entitled to an extension of the Contract Time, nor to recover Extended General Conditions nor to recover any other damages, costs or expenses of any kind as a result of a delay or suspension, if such delay or suspension for which Contractor claims entitlement: (a) was caused in whole or in part, directly or indirectly, by the wrongful acts or omissions or other default of Contractor or any other Contractor Party; and/or (b) is concurrent with a delay caused in whole or in part, directly or indirectly, by the wrongful acts or omissions or other default of Contractor or any other Contractor Party.

J.A. 151 (emphases added). Star's theory of delay damages was that § 8.3.1.2 barred Constructure from seeking a time extension where it contributed to a delay, regardless of any delay imposed by Star. Accordingly, reasoned Star, Constructure was liable for any slippage in the schedule past the Substantial Completion Date. And because § 8.3.1.2 was part of the Contract, Star contended it overrode any otherwise applicable defense related to concurrent delays found in general construction contract law.

The Arbitration Panel disagreed, finding that Star, through its dilatory conduct, waived the Substantial Completion Date. Specifically, the Arbitration Panel noted that: (1) Star repeatedly submitted structural design changes to the single-story section, including several changes submitted days before the Substantial Completion Date, rendering

4

completion by that date impossible; (2) Star did not submit any evidence showing that it intended to hold Constructure to the original completion date or attempted to establish a new completion date; and (3) Star did not respond to a 39-day extension request for poor weather conditions that Constructure submitted in September 2014.[3] Finding the Substantial Completion Date waived, the Arbitration Panel found that Constructure was only obligated to complete the construction in a reasonable time period. The Arbitration Panel found that it did so, thus foreclosing Star's claims for delay damages.[4]

In the Award, the Arbitration Panel also granted Constructure $1,766,033.00 in unpaid contract balance. In this appeal, Plaintiffs dispute $368,504.18 of that amount, representing the cost of structural steel additions to the one-story portion of the hotel arising from Star's late-submitted alterations to the building plans (the "Steel Costs").

C.

Following the Arbitration Panel's issuance of the Award, Plaintiffs petitioned the district court to vacate the Award and Defendants petitioned to confirm the Award and for

---

[3] The Arbitration Panel alternatively noted that even if the Substantial Completion Date was not waived, § 8.1.3.2 would be unenforceable per Maryland's concurrent delay rule. The Arbitration Panel determined that "neither party [could] make the requisite showing of cause and effect that is needed to recover breach of contract damages," and, due to Star's own delay, "Star would have incurred [the] delay-related costs even if [Constructure] had caused no delay at all . . . ." J.A. 3126; *see Gladwynne Constr. Co. v. Mayor & City Council of Balt.*, 807 A.2d 1141, 1167 (Md. Ct. Spec. App. 2002) ("A contractor cannot recover where the delays are concurrent or intertwined . . . ." (internal quotation marks omitted) (quoting *Blinderman Constr. Co. v. United States*, 695 F.2d 552, 559 (Fed. Cir. 1982))). We do not reach the question of the concurrent delay rule because we decline to vacate the Arbitration Panel's finding that Star waived the Substantial Completion Date.

[4] Plaintiffs do not challenge the Arbitration Panel's finding that, assuming the Substantial Completion Date was waived, Constructure completed the construction in a reasonably timely manner.

5

attorneys' fees. The district court confirmed the Award. *See Star Dev. Grp., LLC v. Constructure Mgmt., Inc.*, No. CV RDB-16-1246, 2018 WL 1525703, at *9 (D. Md. Mar. 28, 2018). The district court also granted attorneys' fees to Defendants for both the costs of their petition to confirm and their defense of Plaintiffs' petition to vacate. *Id.*

Plaintiffs then moved to amend the award of attorneys' fees under Rule 59(e), arguing that: (1) Defendants were only entitled to an award of attorneys' fees for their petition to confirm the Award, but not their defense of Plaintiffs' petition to vacate; and (2) attorneys' fees should be awarded only against Star, not the two Hopkins entities. The district court denied Plaintiffs' motion. *Star Dev. Grp., LLC v. Darwin Nat'l Assurance Co.*, No. CV RDB-16-1246, 2019 WL 110952, at *2-3 (D. Md. Jan. 4, 2019). This appeal followed. Plaintiffs claim the district court erred by not vacating the Award's denial of delay damages and grant of the Steel Costs to Constructure. Plaintiffs also allege the district court erred by holding them jointly liable for Defendants' attorneys' fees incurred in defense of Plaintiffs' motion to vacate.

II.

We first address whether the district court erred by declining to vacate (1) the Arbitration Panel's denial of Plaintiffs' delay damages claims and (2) the Arbitration Panel's award of the Steel Costs to Constructure. We find that it did not.

A.

At the outset, the parties dispute which law governs our review—the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2014) ("FAA"), or the Maryland Uniform Arbitration Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-201 to 3-234 ("MUAA").

6

The district court found that the MUAA applied, based on the Contract's plain language. *Star Dev.*, 2018 WL 1525703, at \*6. We agree.

We review a district court's choice of law de novo. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). A federal court sitting in diversity jurisdiction must apply the choice of law rules of the state in which it sits, *see Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004), and in Maryland, parties may contractually agree to arbitrate pursuant to the MUAA, *see Rourke v. Amchem Prods., Inc.*, 835 A.2d 193, 209 (Md. Ct. Spec. App. 2003), *aff'd*, 863 A.2d 926 (Md. 2004).

The FAA also affects the choice of law analysis. We presume that an agreement involving interstate commerce, like the Contract, will be arbitrated under the FAA absent clear indication by the parties to the contrary. *See, e.g.*, *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 383 (4th Cir. 1998). And a generic choice-of-law provision stating generally that a contract is subject to state law is typically insufficient to invoke state arbitration law. *See, e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58 n.2, 62 (1995) (finding federal law applied when contract contained broad choice-of-law clause stating the agreement "shall be governed by the laws of the State of New York" without specifically referencing substantive state arbitration law).

Here, the Contract explicitly invoked the MUAA as the governing law for arbitration. Section 13.1 of the Contract states:

> The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the *Maryland Arbitration Act* shall govern Section 15.4.

7

J.A. 163 (emphasis added). Contract § 15.4 describes the procedures to be used for arbitration and enforcement of arbitral awards. Thus, by its terms, the Contract selects a specific state statute—the MUAA—for arbitration and enforcement of arbitration awards. Nor does the Contract reference any other substantive body of law for those purposes. Further, Section 13.1 is not the type of generic choice-of-law provision generally found insufficient to invoke state arbitration law. Rather, as its plain language shows, it is an "unequivocal expression of the parties' intent to invoke Maryland, rather than federal, arbitration law." *Porter Hayden*, 136 F.3d at 383; *see also Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 246, 249 (5th Cir. 1998) (applying Texas arbitration law when the agreement specified that arbitration of any claim must be settled "in accordance with the Texas General Arbitration Act" and nothing else in the agreement suggested that the parties intended the FAA to apply).

Plaintiffs nonetheless urge us to find that review of the arbitration award is subject to the FAA. Plaintiffs make several unsuccessful arguments on this point.

First, Plaintiffs argue that § 15.4 only governs conduct of the arbitration, rather than a petition to vacate the award arising from that arbitration, and thus a reviewing court should apply the FAA in determining whether to vacate. However, where the parties expressly reference state arbitration law in an agreement, that law applies to vacatur of the arbitrator's decision. *See Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016). Additionally, § 15.4 governs enforcement of the arbitration award, including vacatur, in that § 15.4.2 states that judgment may be entered upon the award "in

8

accordance with applicable law . . . ." J.A. 168. Here, the parties selected the MUAA as the applicable law.

Second, Plaintiffs note that Contract § 13.4.1 states that the rights and remedies provided under the Contract are "in addition to and not a limitation of" those provided by law. Plaintiffs claim this statement—that the Contract operates in addition to a party's other legal rights and obligations—requires us to review the Award under the FAA. But under Maryland law, the more specific provision—the choice of law clause—"take[s] precedence over" § 13.4.1's more general statement that the parties' other legal obligations apply. *Fed. Ins. Co. v. Allstate Ins. Co.*, 341 A.2d 399, 407 (Md. 1975).

Finally, Plaintiffs appear to suggest that the FAA preempts application of the MUAA to review of an arbitration award. In support of this argument, Plaintiffs cite Supreme Court precedent finding the FAA preempted state laws requiring judicial review, rather than arbitration, of certain claims. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). But the Supreme Court has taken care to note that "it does not follow that the FAA prevents the *enforcement* of agreements to arbitrate under different rules than those set forth in the [FAA] itself. . . . [S]uch a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (emphasis added). Rather, "[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . ." *Id.*; *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008) ("The FAA is not the only way into court for parties

9

wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable."). As described above, the parties unequivocally selected the MUAA.

Accordingly, we find that the district court properly reviewed the Award under the MUAA, rather than the FAA.

B.

We turn now to the merits of the Award.

"A [trial] court's decision to grant or deny a petition to vacate or confirm an arbitration award is a conclusion of law, which we review without deference." *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 260 (Md. 2018). Judicial review of arbitration awards is severely circumscribed because a searching review of such awards would frustrate the purpose of arbitration—rapid resolution of disputes without the expenses and delays of litigation. *See Prince George's Cty. Police Civilian Emps. Ass'n v. Prince George's Cty., Md. ex rel. Prince George's Cty. Police Dep't*, 135 A.3d 347, 354 (Md. 2016).

For that reason, "[m]ere errors of law and fact do not ordinarily furnish grounds for a court to vacate or refuse enforcement of an arbitration award." *Downey v. Sharp*, 51 A.3d 573, 583 (Md. 2012) (alterations omitted) (quoting *Bd. of Educ. of Prince George's Cty. v. Prince George's Cty. Educators' Ass'n, Inc.*, 522 A.2d 931, 937 (Md. 1987)) (collecting cases). "[F]actual findings by an arbitrator are virtually immune from challenge and decisions on issues of law are reviewed using a deferential standard on the far side of the spectrum away from a usual expansive de novo standard." *Lang v. Levi*, 16 A.3d 980, 985

10

(Md. Ct. Spec. App. 2011) (alteration in original) (quoting *Mandl v. Bailey*, 858 A.2d 508, 525 (Md. Ct. Spec. App. 2004)).[5] Nor may the reviewing court vacate an arbitration award on the ground that the court would not grant the same relief. *See* MUAA § 3-224(c).

Rather, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *see also Prince George's Cty.*, 135 A.3d at 354 ("Having bargained for the decision of the arbitrator . . . , the parties are bound by it, even if it be regarded as unwise or wrong on the merits . . . ." (quoting *Amalgamated Transit Union, Div. 1300 v. Mass Transit Admin.*, 504 A.2d 1132, 1136 (Md. 1986))); *Mandl*, 858 A.2d at 525 ("An arbitrator's mere error of law or failure to understand or apply the law is not a basis for a court to disturb an arbitral award.").

C.

Under the MUAA, a reviewing court must vacate an award if any of five enumerated statutory grounds are present: if (1) an award was procured by corruption, fraud, or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party; (3) the arbitrators exceeded their powers; (4) the arbitrators so conducted the hearing as to

---

[5] This standard should not be confused with our review of the district court's findings, which is without deference. In conducting that review, we must likewise apply Maryland's deferential standard to the Arbitration Panel's decision.

prejudice substantially the rights of a party; or (5) there was no arbitration agreement. *See* MUAA § 3-224(b).

In addition to these statutory tests, Maryland courts have recognized two additional grounds on which an arbitration award may be vacated: (1) if the award "manifestly disregards" the law, *WSC/2005*, 190 A.3d at 265-66, or (2) if the award is "completely irrational," *Lang*, 16 A.3d at 985 (quoting *Mandl*, 858 A.2d at 525).

Plaintiffs argue that the district court's denial of their delay damages claims and award of Steel Costs to Constructure both manifestly disregarded the law and were completely irrational. We address each argument in turn.

1.

We first consider whether the Arbitration Panel manifestly disregarded the law by declining to award delay damages to Star and granting the Steel Costs to Constructure.

Under Maryland law, an arbitrator manifestly disregards the law when "the [a]rbitrator made a palpable mistake of law or fact appearing on the face of the award." *WSC/2005*, 190 A.3d at 266. Maryland courts "look for an error that is readily perceived or obvious; an error that is clear or unquestionable." *Id.*[6]

---

[6] Maryland's manifest disregard standard for review of awards under the MUAA differs slightly from that applied in this Circuit to review under the FAA, in that Maryland's test looks for mistakes of fact as well as mistakes of law. The oft-articulated test in this Circuit asks whether the "(1) the applicable *legal principle* is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that *legal principle*." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012) (cleaned up) (emphases added).

The Maryland Court of Appeals explicitly adopted a "manifest disregard" standard in *WSC/2005*. Maryland's high court began by surveying cases where it investigated whether

12

i.

We begin with Plaintiffs' contention that the Arbitration Panel's Award, by not granting them delay damages, evinces clear mistakes of law and fact sufficient to rise to "manifest disregard" of the law. The Arbitration Panel found that Star waived the Substantial Completion Date—and thus its claim for delay damages—by repeatedly submitting untimely design changes to the single-story section, failing to establish a new completion date after the original date passed, and not responding to an extension request submitted by Constructure.

Plaintiffs first argue that the Arbitration Panel's waiver finding was a clear legal error because it ignored two Contract provisions stating: (1) that no failure to act by a party could constitute a waiver of any contractual obligation (§ 13.4.2); and (2) that all modifications to the Contract must be in writing (§ 1.1.1). Plaintiffs' arguments thus rely on the following purported rule: a party may not alter a contract under Maryland law by its

courts reviewing an arbitration award had made errors of law or fact. *See* 190 A.3d at 264-65. *WSC/2005* then approvingly cited the above federal two-pronged test. *Id.* at 265. However, *WSC/2005*'s analysis did not stop there—the court went on to elaborate how manifest disregard differs from a mere error by the arbitrator. *Id.* at 265-66. The court concluded its discussion by summarizing the manifest disregard standard it would apply: "[a]ccordingly, we shall decide whether the Arbitrator made a palpable mistake of law *or fact* appearing on the face of the award. We look for an error that is readily perceived or obvious; an error that is clear or unquestionable." *Id.* at 266 (emphasis added).

At the time of the district court's decision, Maryland courts had not explicitly applied the manifest disregard standard to arbitration awards under the MUAA. Because Maryland courts had not clearly endorsed that standard, the district court applied the manifest disregard test set forth in the Fourth Circuit. *See Star Dev.*, 2018 WL 1525703, at *6. We apply the Maryland standard in our de novo review.

subsequent conduct when the contract contains non-waiver provisions and requires all modifications to be in writing.

That is not the law. In Maryland, freedom of contract encompasses "the freedom to alter [a] contract," and contractual provisions which purport to limit this freedom "are disfavored." *Hovnanian Land Inv. Grp. v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 983 (Md. 2011). Even when a contract "'specifically states that no non-written modification will be recognized, the parties may yet alter their agreement,'" including by their "actions or statements." *Id.* (emphasis omitted) (quoting *600 N. Frederick Rd., LLC v. Burlington Coat Factory of Md., LLC*, 19 A.3d 837, 852 (Md. 2011)); *see Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977) ("[W]e note the well settled rule that the parties by their conduct may waive the requirements of a written contract."); *see also Kabba v. Rent-A-Ctr., Inc.*, 730 F. App'x 141, 143 (4th Cir. 2018) (per curiam) (noting the reluctance of Maryland courts to credit no-modification clauses in contracts).

In response, Plaintiffs cite various Maryland cases stating that contracts should be read to give effect to every clause. In Plaintiffs' view, a waiver by conduct would render superfluous the clauses against such a modification. However, none of the cases Plaintiffs cite controvert the general proposition under Maryland law that subsequent conduct may modify a contractual provision. Rather, they discuss how to interpret contractual language to harmonize conflicting provisions. By contrast, removal of a provision through waiver, while of course rendering the *removed* provision superfluous, does not create the type of conflict among competing provisions addressed in Plaintiffs' cases.

14

Further, even if Plaintiffs' cited caselaw supported their argument—that modification of a contract through subsequent conduct violates the rule against superfluity—the question of whether subsequent conduct can waive a provision would still be subject to reasonable debate, given the body of caselaw holding the opposite. *See, e.g.*, *Hovnanian*, 25 A.3d at 983. As such, any error would be neither "clear [n]or unquestionable." *WSC/2005*, 190 A.3d at 266. For that reason, we discern no manifest disregard of the law on the face of the Award.

Nor do we find any factual issues warranting reversal of the Arbitration Panel's denial of delay damages. Plaintiffs assert that the Arbitration Panel factually erred in finding that Star's conduct constituted a waiver. "[W]hether subsequent conduct of the parties amounts to a modification or waiver of their contract is generally a question of fact to be decided by the trier of fact." *Hovnanian*, 25 A.3d at 983 (quoting *Wolfe*, 369 A.2d at 576).

We may only vacate if there is a "palpable mistake of . . . fact appearing on the face of the award." *WSC/2005*, 190 A.3d at 266; *see also Downey*, 51 A.3d at 583 ("Mere errors of . . . fact do not ordinarily furnish grounds for a court to vacate or refuse enforcement of an arbitration award." (alterations and quotations omitted) (collecting Maryland cases)).

Plaintiffs assert that the Arbitration Panel wrongly weighed Star's late submission of design changes requiring the addition of steel support members to the one-story section. According to Plaintiffs, the Arbitration Panel ignored the fact that Constructure was already well behind schedule when Star submitted those changes, and thus that Star's conduct did not contribute to the delay. This is not a "palpable" mistake of fact that is "readily perceived

15

or obvious" or "clear or unquestionable." *WSC/2005*, 190 A.3d at 266. Rather, the Arbitration Panel exhaustively cataloged the nature of the delays imposed by Star while noting that "[a]part from [Star's] changes, it appears that [Constructure] executed the work in the one-story portion at least as promptly as projected in its baseline schedule, and often improved upon those durations." J.A. 3124. As such, we discern no clear mistake of fact in the Arbitration Panel's findings. *See Downey*, 51 A.3d at 583.

We thus decline to vacate the Arbitration Panel's denial of delay damages to Plaintiffs for manifest disregard of the law.

ii.

We now turn to whether the Arbitration Panel manifestly disregarded the law by granting Constructure the Steel Costs. Plaintiffs claim that the Arbitration Panel ignored the law by refusing to credit a waiver provision in the Contract and a subsequent release document.

Plaintiffs first argue that, although Star added structural steel requirements in May and July 2014, and again from October 2014 through March 2015, Constructure never made a claim for this added steel during the hotel's construction, but instead first stated its claim just prior to the arbitration proceeding. Plaintiffs thus allege that the claim for Steel Costs was barred by Contract § 15.1.2, which states that any claim by Constructure "must be initiated within seven (7) days after the occurrence of the event giving rise to such Claim or the Claim is waived." J.A. 167.

The Arbitration Panel disagreed, finding that Star demonstrated a "general pattern of failing to follow the contract's administrative processes and failing to respond to change

16

order requests, no matter how routine in nature," and thus that "contractual time limits for change order submissions" were "effectively waived by Star." J.A. 3128.

Plaintiffs' arguments fail to show any palpable legal or factual error. *WSC/2005*, 190 A.3d at 266. As with the delay damages waiver, the Arbitration Panel rested its decision on an exhaustive survey of Star's conduct, which displayed an intent to waive the time limitations on the Contract's change request process. Plaintiffs' claims regarding § 15.1.2 thus fail.

Plaintiffs also note that Constructure submitted, alongside one of its payments, a boilerplate release and waiver of all claims ("Release"). Plaintiffs argue that, because the Arbitration Panel did not consider or discuss the Release, it manifestly disregarded the law.

However, contrary to Plaintiffs' assertions, the Arbitration Panel's failure to explain its reasoning is not a sufficient ground to vacate. *See, e.g.*, *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."); *accord Prince George's Cty.*, 135 A.3d at 354. Rather, we must again search for palpable factual or legal error on the face of the Award, *WSC/2005*, 190 A.3d at 266, keeping in mind that our review is "very narrowly limited" to that question, *Downey*, 51 A.3d at 585 (quoting *Ams. Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985)).

A plain reading of the Award shows no clear or undisputed factual or legal error, much less any error "appearing on the face of the award." *WSC/2005*, 190 A.3d at 266. Here, the Arbitration Panel found, and the record shows, that Star did not comply with numerous requirements of the Contract. And Maryland law states that a party's conduct

17

may waive contractual requirements. *See Hovnanian*, 25 A.3d at 983. It is thus arguable that Star's "general pattern" of disregard of the Contract's requirements was so severe as to waive Constructure's later release of future payments. J.A. 3128. That meets the low bar of our severely circumscribed review. *See Downey*, 51 A.3d at 583.

As such, we agree with the district court that the Arbitration Panel did not manifestly disregard the law when it awarded Constructure the Steel Costs.

2.

We now consider whether the Arbitration Panel's Award should be vacated for being "completely irrational."

For several decades, Maryland's intermediate appellate courts have held a "completely irrational" decision by an arbitrator may be vacated. The "completely irrational" test was first adopted in *O–S Corp. v. Samuel A. Kroll, Inc.*, in which the Maryland Court of Special Appeals held that a "completely irrational" award would mean that the arbitrator exceeded his or her powers or that the award was somehow procured by undue means—both grounds for vacatur under the MUAA. 348 A.2d 870, 872-73 (Md. Ct. Spec. App. 1975).

*Kroll* directed the "completely irrational" inquiry primarily to an arbitrator's irrational interpretation of a contract. *See id.* at 873-76; *see also Bd. of Educ. of Prince George's Cty.*, 522 A.2d at 935 n.2. *Kroll* also stated that if there is any evidence in support of the arbitrator's interpretation—even if that interpretation appears arbitrary or mistaken—the court may not vacate the award. *Kroll*, 348 A.2d at 874; *see also Prince George's Cty. Educators' Ass'n, Inc. v. Bd. of Educ. of Prince George's Cty.*, 486 A.2d

18

228, 232 (Md. Ct. Spec. App. 1985) ("We believe that the complete irrationality standard is flexible enough to allow reversal of an arbitrator's decision where, as here, the arbitrator draws erroneous factual conclusions which form the sole basis for his award."), *aff'd on other grounds*, 522 A.2d 931 (Md. 1987).

Subsequent precedential Maryland cases have focused on *Kroll*'s mandate that the court look for an error of law and have not addressed *Kroll*'s discussion of supporting record evidence. Under the modern formulation of Maryland's "completely irrational" test, "[o]nly a completely irrational decision by an arbitrator on a *question of law*, so extraordinary that it is tantamount to the arbitrator's exceeding his powers, will warrant the court's intervention." *Lang*, 16 A.3d at 985 (emphasis added) (quoting *Mandl*, 858 A.2d at 525); *see also Snyder v. Berliner Constr. Co.*, 555 A.2d 523, 526 (Md. Ct. Spec. App. 1989) ("[A]rbitrators exceed their powers under [*Kroll*], if, though having full power to consider the subject matter of a dispute, they issue an award which cannot be supported by any *rational construction* of the parties' *substantive contractual provisions*." (first emphasis added)).

In addition, the viability of Maryland's "completely irrational" ground has been cast into doubt by the decision of the Maryland Court of Appeals in *Downey*. There, Maryland's high court declined to reach the question of whether the "completely irrational" standard applies to review of arbitration awards under the MUAA. *See* 51 A.3d at 583; *see also*

19

*Stephen L. Messersmith, Inc. v. Barclay Townhouse Assocs.*, 547 A.2d 1048, 1051 (Md. 1988).[7]

Thus, to summarize, there is currently some uncertainty in Maryland law on whether and how to apply the "completely irrational" test. Maryland's trial and intermediate appellate courts have long applied the "completely irrational" test in reviewing arbitral awards under the MUAA. That test asks whether the arbitrator erred on a question of law in a manner equivalent to exceeding his or her authority. Additionally, the case originating the "completely irrational" standard (*Kroll*) allowed courts to consider the factual record as well. While Maryland courts have generally neither applied nor extended this factual portion of *Kroll*'s inquiry, they have not overruled it. All that said, Maryland's high court has declined to pass on the validity of the "completely irrational" standard used by its lower courts.

We need not decide the viability of the "completely irrational" standard in Maryland, nor its proper formulation, because Plaintiffs' arguments for vacatur fail under any version of the test.

i.

---

[7] Since *Downey*, one Maryland appellate court has recited, but not applied, the "completely irrational" test. *See Harrison v. Sheroke*, No. 0925, 2015 WL 5944028, at *5 (Md. Ct. Spec. App. May 13, 2015) (unreported). Other courts faced with the test have declined to pass on its continuing viability, instead noting that they need not do so because its application would not result in reversal of the trial court. *See WSC/2005 LLC v. Trio Venture Assocs.*, No. 1531, 2017 WL 4422973, at *7 (Md. Ct. Spec. App. Oct. 5, 2017) (unreported), *aff'd sub nom WSC/2005*, 190 A.3d 255; *B & S Inc. v. TC Shopping Ctr., LP*, No. 1543, 2017 WL 244095, at *9 (Md. Ct. Spec. App. Jan. 20, 2017) (unreported).

We begin with the Arbitration Panel's finding that Plaintiffs waived the Substantial Completion Date and thus are not entitled to delay damages.

First, despite the existence of the above-described "completely irrational" test in Maryland, Plaintiffs encourage us to use the identically named "completely irrational" test set forth by some other Circuits for review of arbitral awards under the FAA, which asks whether the arbitrator's decision lacks record support altogether. *See, e.g.*, *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account*, 618 F.3d 277, 295-96 (3rd Cir.), *as amended* (Dec. 7, 2010). This FAA standard is a factual inquiry while, as discussed above, modern Maryland cases applying the MUAA look for an irrational decision on a question of law. *Lang*, 16 A.3d at 985.

Invoking the wrong standard, Plaintiffs make no claims of legal error in their opening brief. As such, they have waived any argument on this point. *See Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 290 (4th Cir. 2018) ("[C]ontentions not raised in the argument section of the opening brief are abandoned." (quoting *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004))). Even if they had not, as described above with respect to manifest disregard, there is no apparent error of law in the Arbitration Panel's decision as to waiver of the Substantial Completion Date, let alone an "extraordinary" one. *Lang*, 16 A.3d at 985.

However, because the FAA standard Plaintiffs rely on resembles the factual inquiry authorized by *Kroll*, our inquiry does not end with a finding that there is no legal error— although, we emphasize again, it is not clear that Maryland still recognizes this basis for vacatur of an arbitral award. *Kroll* set a low bar for evidence sufficient to support the

arbitrator's decision: "[O]ur review her[e] need not seek a preponderance of the evidence to support the award, nor even substantial evidence. There need b[e] only *some* evidence to meet the test of rati[o]nality, i.e., it may be so little as to make the result 'arbitrary', so long as it is not completely irrational." *Kroll*, 348 A.2d at 874 (emphasis added). Assuming for the sake of argument that *Kroll*'s evidentiary inquiry applies, the record contains substantial evidence supporting the Arbitration Panel's waiver finding, for the same reasons as described above with respect to manifest disregard.

Plaintiffs thus cannot show that the Arbitration Panel's decision on delay damages was completely irrational, either due to legal error or due to an absence of record support.

ii.

Regarding the Steel Costs, Plaintiffs briefly assert that the Arbitration Panel's finding was completely irrational because certain record evidence showed that portions of the Steel Costs were charged during construction from Constructure to one of its subcontractors. The Arbitration Panel rejected a similar argument, noting that Constructure's efforts to recover from the subcontractor did not preclude recovery against Star. Regardless, Plaintiffs again seek to apply the FAA's "completely irrational" formulation and have thus forfeited any argument under the modern MUAA formulation. Even if they had not, and again assuming without deciding that *Kroll*'s factual inquiry applies, the record evidence easily clears *Kroll*'s low evidentiary bar.

As such, the Arbitration Panel's award of the Steel Costs to Constructure was not completely irrational, and we decline to vacate it on that ground.

III.

22

We now address whether the district court erred in: (1) granting attorneys' fees to Defendants for their petition to confirm the Award, as well as their defense of Plaintiffs' petition to vacate and (2) holding the Hopkins entities jointly liable with Star for attorneys' fees.

"We review a district court's grant of attorneys' fees for abuse of discretion, but review legal determinations *de novo*." *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 168 (4th Cir. 2018); *see also WSC/2005*, 190 A.3d at 270 (holding that an award of attorneys' fees under the MUAA is in the trial court's discretion). "[W]e will only reverse such an award if the district court is clearly wrong or has committed an error of law." *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 675 (4th Cir. 2015) (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)).

A.

Plaintiffs claim the district court committed legal error because the MUAA only permits attorneys' fees in connection with a party's motion to confirm an arbitration award, while the district court granted Defendants attorneys' fees in connection with their defense of Plaintiffs' motion to vacate. We disagree.

Turning first to the statutory text and structure, MUAA § 3-228(b) (judgments, costs and disbursements) provides that "[a] court may award costs of the petition, the subsequent proceedings, and disbursements." That provision does not specify whether such costs apply to petitions to vacate and petitions to confirm, but it directly follows both § 3-226 (denial of petition to vacate) and § 3-227 (confirmation of award by court). As such, § 3-228(b) arguably encompasses both petitions to vacate and confirm.

23

Second, Maryland courts have broadly interpreted the MUAA to permit awards of attorneys' fees for all actions necessary to enforce an arbitration award. In *Blitz v. Beth Isaac Adas Israel Congregation*, the prevailing party in arbitration successfully moved for attorneys' fees in connection with a petition to confirm the award. 720 A.2d 912, 913-14, 919 (Md. 1998). Following the petitioner's motion for clarification as to whether the court's award encompassed attorneys' fees at the appellate level, the court stated, "pursuant to § 3–228(b), the prevailing party is entitled to recover attorneys' fees incurred both at trial and on appeal in confirming *and enforcing* an arbitration award." *Id.* at 920 (emphasis added). The court noted that its decision contemplated "the payment of *all* attorneys' fees *necessary to obtain confirmation* of the arbitration award." *Id.* (second emphasis added).

Here, in order to obtain confirmation of the arbitration award, Defendants necessarily had to defend against Plaintiffs' motion to vacate. The language of the statute contemplates as much, noting that a confirmation must follow an application to vacate that is denied. *See* MUAA § 3-226.[8]

We thus find that the district court did not err in granting Defendants fees incurred in their defense of Plaintiffs' motion to vacate the Award.

B.

---

[8] Further, reading *Blitz* to preclude defense fees for a petition to vacate while permitting fees for a petition to confirm would make little sense because similar costs arise regardless of whether a single party is petitioning or the parties are cross-petitioning. Presumably, had Plaintiffs not filed a petition to vacate, they would have raised similar arguments and defenses in their opposition to Defendants' motion to confirm, causing Defendants to incur similar costs. Those costs would unquestionably be chargeable to Plaintiffs under *Blitz*. Excluding those costs simply because Plaintiffs filed a separate petition to vacate is thus a distinction lacking logical foundation.

Plaintiffs also argue that the district court erred by awarding attorneys' fees against both Star and Hopkins. Plaintiffs claim that because the Arbitration Panel only granted the Award against Star, Hopkins should be exempt from paying any attorneys' fees. However, the Award also denied certain bond claims by Hopkins based on Constructure's alleged responsibility for construction delays, and thus was not awarded solely against Star. Likewise, Hopkins joined Star in its petition to vacate before the district court, thus contributing to Defendants' fees "necessary to obtain confirmation of the arbitration award." *Blitz*, 720 A.2d at 920. As such, the district court did not err in holding Hopkins and Star jointly liable for the award of attorneys' fees.

## IV.

In summary, the judgment of the district court is

*AFFIRMED.*